# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BERNARD BAILEY, | ) | |
| Plaintiff, | ) | |
| VS. | ) | No. 19-1197-JDT-cgc |
| RALPH DECKER, ET AL., | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION FOR INJUNCTIVE RELIEF, DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On September 9, 2019, Plaintiff Michael Bernard Bailey, who is incarcerated at the Lois M. Deberry Special Needs Facility in Nashville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns events that occurred during Bailey's prior incarceration at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee. On September 10, 2019, the Court granted Bailey leave to proceed *in forma pauperis*. (ECF No. 4.) Subsequently, on December 9, 2019, Bailey filed what he styles an "Affidavit of Complaint," which the Court construes as an amendment that supplements the original complaint. (ECF No. 7.) The Clerk shall record the Defendants as: (1) Ralph Decker, a Unit Manager at the NWCX; (2) Corporal (Cpl.) William Kirk; (3) Correctional Officer (CO) Chase Daniels; (4) former NWCX Warden Shawn Phillips; (5) CO Rochell Hendrix;

(6) Sergeant (Sgt.) First Name Unknown (FNU) Spiller, Acting Unit Manager; (7) Matt Cooper, Assistant Warden; (8) Debra Johnson, Assistant Commissioner at the Tennessee Department of Correction (TDOC); (9) Tony Parker, TDOC Commissioner; (10) Sgt. FNU Rogers, Internal Affairs Officer at NWCX; (11) Sgt. Claudia Ramos; (12) CO Joseph Dyszczakowsk; (13) Captain (Capt.) FNU Petty; (14) Sgt. FNU McCage; (15) Cpl. FNU Montgomery; (16) Cpl. FNU McKinley; (17) Cpl. FNU Mayborne; (18) Cpl. FNU Keefer; (19) CO FNU Bates; and (20) Elizabeth Decker, Counselor.

The original complaint sues the Defendants in both their individual and official capacities. Alleging that the Defendants violated his First Amendment and Fourteenth Amendment rights, Bailey claims that his breakfast tray was given to another inmate on June 20, 2019, and that the Defendants revoked certain prison privileges after he was involved in a verbal altercation about the incident ("Restrictions Claim"). He also contends that Defendants failed to process his grievance about the matter ("Grievance Claim"). (ECF No. 1 at PageID 2, 5-9, 16.) Bailey further alleges that Defendants violated his Eighth Amendment rights by constantly putting his life in danger. He states that he has protective custody status, but the Defendants continue to house him with violent "close custody" inmates ("Protection Claim"). (*Id*. at PageID 5-7, 10-15.) Bailey also contends that close custody inmates impermissibly prepare his and other inmates' food ("Food Claim"). (*Id*. at PageID 7-8.)

Bailey states that he "constantly liv[es] in fear," which has caused him to suffer high blood pressure, anxiety, stress, weight loss, and migraine headaches. (*Id*. at PageID 15.)

2

He seeks $20,000 in compensatory damages and $20,000 in punitive damages from each of the Defendants. (*Id*. at PageID 17-18.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>   (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>   (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at

3

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Bailey filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Bailey sues the Defendants in both their official and individual capacities. (ECF No. 1 at PageID 2.) Because all of the Defendants were, at the relevant time, employed by the State of Tennessee, the official capacity claims are treated as claims against Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Bailey, however, does not state a valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the

4

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity and therefore may not be sued for damages. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

With regard to Bailey's Restrictions Claim, he alleges that Cpl. Kirk intentionally gave away his breakfast tray to another inmate on June 20, 2019, while Bailey was outside for recreation. Bailey and Kirk argued about Kirk's actions, which allegedly led to the restriction of Plaintiff's recreation, phone, and commissary privileges for thirty days. (ECF No. 1 at PageID 2, 5-6, 8-9.)

A Fourteenth Amendment due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of*

*Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A prison restriction does not give rise to a protected liberty interest unless the restriction imposed constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to administrative segregation/ punitive segregation, the loss of package privileges, fines, and restitution generally do not constitute an atypical and significant hardships in the context of prison life. *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Bailey's purported loss of a month's recreation is not a cognizable liberty interest. Furthermore, his vague allegation about punitive loss of phone and commissary privileges for thirty days does not include material facts such as the extent and nature of each supposed restriction. In the absence of any allegation that they persisted to the point of affecting Bailey's safety or health, those minor deprivations do not amount to constitutional violations. Missed recreation for a finite period, for example, clearly does not rise to that level. *See also Payne v. Dretke*, 80 F. App'x 314, 315 (5th Cir. 2003) ("The penalties imposed upon Payne following his disciplinary conviction—commissary and recreation restrictions—do not implicate a liberty interest under the Due Process Clause."); *Harris v. Farley*, No. 4:11-CV-0619, 2011 WL 2472806, at *2 (N.D. Ohio June 22, 2011) ("Petitioner suffered the potential loss of visitation and commissary privileges, neither of which qualify as a protected liberty interest."). Therefore, Bailey did not have a protected liberty interest that required further due process protections.

In his Grievance Claim, Bailey contends that his grievance is still pending because the "Grievance Chairperson is always sick and hardly come[s] to work." (ECF No. 1 at

PageID 5.) However, prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure."). Even if a grievance system was constitutionally guaranteed, Bailey has not shown how any particular Defendant's conduct with respect to the grievance process directly affected his "ability to bring his claim before any court." *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted). Furthermore, a failure to take corrective action in response to an inmate grievance does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the constitutional] violation."). Bailey's contentions on the Grievance Claim fail to state a cause of action.

As to the Protection Claim, Bailey alleges he has complained to Unit Manager Decker about being housed in protective custody around violent close custody inmates. He states it makes him nervous and raises his blood pressure because protective custody inmates must be handcuffed whenever they leave their cells but the close custody inmates do not have to be handcuffed. Yet the protective custody inmates such as Bailey allegedly are "around them constantly all day long," which puts his life in danger. (ECF No. 1 at

PageID 5, 14-15.) The Protection Claim includes allegations particular to several individual Defendants, including:

(1) Bailey states that Cpl. Kirk handcuffs him when removing him from his cell but does not put the "violent close custody inmates . . . back in their cell[s] and secure their door[s]." (*Id*. at PageID 6.)

(2) Bailey claims that CO Daniels "constantly put[s] my life in danger . . . when . . . escorting me to the shower or outside recreation" by not "put[ting] the close custody inmates back in their cell[s]." (*Id*. ("Daniels . . . will be . . . laughing saying I shouldn't have did what I did by letting internal affairs know about that Sergeant was going to get hurt by those gang members . . . .").)[1] Bailey states that, as a result, he "just stop[ped] letting [Daniels] take [him] outside." (*Id*. at PageID 7.)

(3) Bailey says he complained to Warden Phillips in March and April of 2019 about protective custody inmates being "in the same pod with close custody inmates." (*Id.* at PageID 7.) Bailey states Phillips told him that he is only "pending P[rotective] C[ustody] [and] waiting [for] transfer to another facility.") (*Id*.)

(4) Bailey alleges that he asked CO Hendrix on or about April 1, 2019, to help the protective custody inmates by letting someone know they were around violent close custody inmates. He asked her to either contact the American Correction Association or "talk to the Warden, Capt.'s, etc." about the situation. (*Id*. at PageID 10.) However,

---

[1] Bailey does not explain this statement, but it appears to mean that Daniels was chiding Bailey for his failure to give Internal Affairs advance warning about a planned attack on a Sergeant by inmate gang members.

Hendrix refused his request, telling Bailey it was "left up to Classification and the Wardens." (*Id.*) When he asked her what she would do if he was attacked by a close custody inmate while she was taking Bailey somewhere in handcuffs, she told him she was "not here to get killed." (*Id.*)

(5) Bailey states that he complained about this issue to Commissioner Parker and Assistant Commissioner Johnson, who told him that "they need bed space . . . and unfortunately I have to be around these violent close custody inmates and hopefully I will be transfer[red] to another prison before something major happen[s] to me." (*Id.* at PageID 12.)

(6) Bailey alleges he told Decker that, as his counselor, "she is suppose[d] to be an advocate" for him and that she should report the dangerous situation "to an outside agenc[y]." (*Id.* at PageID 14.)

Plaintiff alleges generally that Defendants Spiller, Ramos, Rogers, Petty, McCage, Montgomery, McKinley, Mayborne, Keefer, Cooper, Dyszczakowsk, Bates, and Decker were "all aware of what danger I was in by me being on protective custody and being housed in the same pod with violent close custody inmates." (*Id.* at PageID 11; *see also id.* at PageID 13.)

The Court construes Bailey's Protection Claim as asserting that the Defendants failed to protect him. These allegations amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to

9

guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"). "[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38. In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

"[A] correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). However, the facts alleged must show that

the officers "provid[ed] an opportunity for the attack and d[id] nothing" or remained "idly by while a known attack took place without intervening." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

Bailey, however, does not allege that he has in fact been attacked or suffered any injury from Defendants' supposed failure to protect him. Rather, he states only that he is afraid for his life because of having to be around and in the same pod with close custody inmates. (ECF No. 1 at PageID 7, 10-11, 13-14.) Though he alleges he has high blood pressure, anxiety, stress, weight loss, migraines, and general pain and suffering, (*id.* at PageID 15), he has not shown how these conditions specifically resulted from the alleged failure to protect, rather than from the rigors of prison life generally. There are no factual allegations in the complaint setting out how he was personally affected or harmed by the conditions of which he complains. One of the three elements of standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted). Unless Bailey suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001). Because Bailey has not, in the first place, alleged that he suffered any personal injury in connection with the Protection Claim, and has not, in any event, demonstrated either the

objective or subjective components of an Eighth Amendment failure to protect claim, he fails to state a claim for relief.

The Court notes the complaint's repeated suggestions that some Defendants made inappropriate comments to Bailey. (*See*, *e.g.*, ECF No. 1 at PageID 6 (Kirk "make a remark like, Bailey, you scared as hell and start laughing") & at PageID 7 (Daniels "will make a comment like he will go out the door and just leave me in the pod handcuffed if I don't come on").) Harassment and verbal abuse, no matter how "shameful and utterly unprofessional," do not violate the Eighth Amendment. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard); *see also Morrison v. Greenwald*, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010), report and recommendation adopted, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards. Furthermore, Plaintiff suffered no injury from the insult."). Even a guard's verbal threat of assault does not violate a prisoner's constitutional rights. *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004). Just as the Constitution "does not mandate comfortable prisons," *Wilson*, 501 U.S. at 298, it does not mandate polite prison guards or officials. "Derogatory or abusive language and conduct do not give rise to a claim under § 1983." *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Accordingly, Bailey's allegations about being insulted or threatened do not state a claim under § 1983.

As to the Bailey's Food Preparation Claim, he contends that the close inmates "fix [his] food on all three meals without a staff member[] monitor[ing] them." (ECF No. 1 at PageID 7.) Bailey states he complained to Warden Phillips that they "[do] not even have a medical food handler permit to be fixing our meals." (*Id.* at PageID 7-8.) Bailey alleges Phillips responded that "if [Plaintiff] don't like how things are handle[d] back here . . . well then [Plaintiff] can check out of P[rotective] C[ustody] and go back to General Population." (*Id.* at PageID 8.) Plaintiff's allegations amount to a claim under the Eighth Amendment, which imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. The Eighth Amendment, however, "is concerned only with 'deprivations of essential food, medical care, or sanitation' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Bailey's Food Preparation Claim does not sufficiently allege that he was in imminent danger of serious physical injury because of unsanitary kitchen conditions. Although he alleges that non-kitchen workers were not medically certified to handle food, there is no allegation that any of those workers actually had a medical condition that posed a danger to inmates who ate the food they served. In addition, Bailey does not allege that he became sick or suffered any other physical harm from food served by non-kitchen close custody inmate workers. *See Hunter v. Helton*, No. 1:10-cv-00021, 2018 WL 1426221, at *3 (M.D. Tenn. Apr. 8, 2010) (finding no imminent danger when prisoner failed to allege that food handlers had communicable diseases or infections that posed a risk of harm or that he suffered any physical injury); *Hall v. Jarrigan*, No. 2:07-CV-127, 2008 WL 5377893, at *5 (E.D. Tenn. Dec. 18,

13

2008) (allegation that prisoner who served drinks was denied sanitary gloves fails to state a constitutional claim "absent some indication that the food or drink itself is unsanitary or that the server has a medical condition which poses a risk of harm to inmates who consume the food and drinks"). The Food Preparation Claim fails to state a claim for relief.

In the supplemental amendment filed December 9, 2019, Bailey alleges that on November 26, 2019, Decker came to his cell "and remove[d] all of my property . . . for no reason at all and threw all of my property away." (ECF No. 7 at PageID 37.) He alleges Decker turned off the water and heat in Bailey's cell, denied him showers for one week, restricted him to two pieces of bread on his food trays, and issued him a November 26, 2019 write-up "for possession of a deadly weapon." (*Id*. at PageID 39.) Bailey further contends Decker denied him access to the courts and alleges Decker actions were in retaliation for "the civil suit I filed against him." (*Id.* at PageID 37.)

Claims for deprivation of property are not actionable under § 1983 if adequate state remedies are available to redress the deprivation. *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985). This is true even if the property is taken intentionally. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "[T]he State of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding,* 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks v. Dutton,* 751 F.2d 197, 199 (6th Cir. 1985)). Thus, Bailey's claim concerning removal of his personal property are not actionable before this Court.

14

Bailey also alleges that Decker threw away his property in retaliation for his filing of a civil suit against him, presumably meaning this case. The Court reviews this retaliation claim against under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. Filing a grievance also is protected conduct. *Hill*, 630 F.3d at 472. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Bailey sufficiently alleges the first and second elements of a retaliation claim, but the allegation that Decker's actions were motivated by the filing of this action is merely conclusory. Bailey does not state that he ever told Decker about the filing of the action, that he knew Decker had learned about the complaint in some other way, or that Decker made any comments at the time of the incident suggesting his actions were retaliatory. Thus, Bailey does not adequately state a First Amendment retaliation claim.

The Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time . . ., *i.e.*, only six days' is not actionable conduct." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000) (unpublished decision)); *see Argue v. Hofmeyer*, 80 F. App'x 427, 429-30 (6th Cir. 2003) (citing *Sandin*, 515 U.S. at 484-86, and *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim)). Thus, Bailey's claim concerning a lack of shower access fails to state a claim for relief.[2]

Bailey's vague allegations that he was given only two pieces of the bread on his food trays do not provide sufficient detail to state a colorable claim. For example, Bailey does not indicate how many times this occurred or the content and amount of his other food sources, such as the commissary.

Bailey alleges generally that Decker denied him "access to and from the courts." (ECF No. 7 at PageID 37.) Prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. To have standing to pursue a First Amendment claim

---

[2] The disciplinary charge for possession of a deadly weapon, (ECF No. 7 at PageID 39), raises the possibility that the property confiscation and limited movement imposed on Bailey may have lawfully been related to NWCX's legitimate safety and security concerns about him. *See Hayes*, 424 F. App'x at 549.

that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394. In addition, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Bailey does not describe the cause of action with which Decker allegedly interfered, so the Court cannot determine whether any legal claim was nonfrivolous. Bailey also does not allege specifically how Decker's actions supposedly hindered his efforts to pursue a legal claim and caused an "actual injury." Presuming that he is referring to the filing of this case, Bailey has not missed any deadlines or been penalized for failure to comply with any orders in this matter; therefore, he does not appear to have suffered any actual injury. He thus fails to state a plausible access-to-courts claim.

On November 15, 2019, Bailey filed a motion for preliminary injunction and temporary restraining order (TRO). (ECF No. 6.) He asks "to be housed somewhere safe from these violent close [custody] inmates." (*Id.* at PageID 34.) In determining whether to issue a TRO or emergency injunction, the Court must balance four factors: (1) the movant's likelihood of success on the merits, (2) whether the movant will suffer irreparable

17

injury without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) whether the public interest is best served by granting the injunction. *See Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007) (citing *Northeast Ohio Coal for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006).

Although Bailey alleges he will suffer irreparable injury without the injunction, he does not address any other factor. The Court has already determined that his Protection Claim fails to plead a cause of action under § 1983. Bailey therefore cannot demonstrate a likelihood of success on the merits. It is not clear whether granting the injunction will cause substantial harm to others, and Bailey does not assert how the public interest would be best served by granting him the injunction. These factors weigh against granting an injunction.

Furthermore, the Court does not, in any event, have the authority to supervise classification and housing assignment of inmates. An inmate does not have a protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976); *Sandin*, 515 U.S. at 484-87. Because "maintaining security, order, and discipline are essential goals of a corrections system," prison officials are given wide latitude in the adoption and application of prison policies, and courts have deferred to judgments of prison officials in upholding these regulations." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011).

For all of the foregoing reasons, Bailey's complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that Bailey should be given an opportunity to further amend his complaint.

In conclusion, the Court DISMISSES Bailey's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend, however, is GRANTED. Bailey must file any amendment within twenty-one days after the date of this order.

Bailey is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The text of the

complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Bailey fails to file an amended complaint within the time specified, the Court will dismiss the case in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE